IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ABEINSA HOLDING INC., *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 16-10790 (KJC) |
| Debtors. | : | (Jointly Administered) |

| | | |
|---|---|---|
| CROWN FINANCIAL, LLC, | : | Civ. No. 19-643-CFC |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | |
| DRIVETRAIN, LLC, as Litigation Trustee, | : | |
| | : | |
| Appellee. | : | |

Dwayne D. Werb, WERB & SULLIVAN, Wilmington, Delaware; Dan Fogel, FOGEL & MCEVILY, LLP, Houston, Texas

   *Counsel for Appellant*

Robert J. Dehney, Andrew R. Remming, Matthew O. Talmo, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; David Dunn, Allison Wuertz, HOGAN LOVELLS US LLP, New York, New York

   *Counsel for Appellee*

**MEMORANDUM OPINION**

October 23, 2020
Wilmington, Delaware

_[signature]_
CONNOLLY, UNITED STATES DISTRICT JUDGE

This is an appeal from the Bankruptcy Court's decision to sustain the objection of the Litigation Trustee, Drivetrain, LLC, to the proof of claim filed by appellant Crown Financial, LLC. *In re Abeinsa Holding Inc.*, 2019 WL 1400175 (Bankr. D. Del. Mar. 26, 2019) (B.D.I. 1989, 1999).[1] The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(2)(B). This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

I review the Bankruptcy Court's findings of fact for clear error and exercise plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). I will affirm the Bankruptcy Court's decision for the reasons discussed below.

## I. BACKGROUND

Crown engages in accounts receivable financing or "factoring." In April 2014, Crown and Synflex Insulations, LLC executed a contract titled "Account Purchase Agreement." D.I. 16 at 250. The Account Purchase Agreement gave Crown the right to purchase at a discounted rate Synflex's accounts receivables in

---

[1] The docket of the Chapter 11 cases, captioned *In re Abeinsa Holding Inc., et al.*, No. 16-10790-KJC (Bankr. D. Del.), is cited herein as "B.D.I. __." The appendix (D.I. 12) filed in support of Crown's opening brief (D.I. 11) is cited herein as "Crown Appx. __," and the appendix (D.I. 16) filed in support of the Trustee's answering brief (D.I. 15) is cited herein as "A __."

2

the form of Synflex's invoices. The Agreement also have Crown the exclusive right to collect directly from the respective Synflex customers the full amount of the invoices Crown purchased.

One of the Debtors in this case, Abener Teyma Mojave General Partnership ("ATMGP"), was a Synflex customer. ATMGP was the general contractor for a construction project at the Mojave Solar Power Plant in San Bernardino, California. Synflex was a subcontractor on the project. Pursuant to contracts executed by ATMGP and Synflex in 2013, Synflex supplied and installed insulation and other materials for the Mojave project.

On or about the same day that Crown entered into the Account Purchase Agreement with Synflex, Philip Tribe, an account manager with Crown, sent a letter to ATMGP. The letter, which I will refer to as "the April letter," reads in relevant part:

> This will inform you that *[Synflex] has assigned all rights, title, and interest in its accounts receivable to [Crown] effective today's date.* All present and future payments due to "Synflex" need to be remitted via wire transfer to [Crown]. Please confirm by signing below that these remittance instructions will not be changed without written instructions from both "Synflex" and "Crown". Also attached is Exhibit "A," which is a list of [five] invoice(s) totaling $2,304,325.33 that we will be advancing on initially. Please confirm by signing below that these invoice(s) are in line for payment and the payment obligation of [ATMGP] is not subject to any offsets, back charges, or disputes of any kind of nature.

3

> In the future, we will be faxing/emailing additional
> Exhibit "A's" for your confirmation pursuant to these
> same terms and conditions.

A1 (emphasis added). ATMGP's CFO signed the April letter and "accepted and acknowledged" it on April 4, 2014. *Id.*

From late April 2014 through mid-October 2014 Crown sent ATMGP an additional 18 Exhibit A's. ATMGP paid directly to Crown the invoice amounts for many but not all of the accounts receivables listed in the Exhibit A's. According to Crown, the invoice amounts in the combined Exhibit A's totaled $5.41 million, and ATMGP currently owes Crown $2.02 million of that amount.

Unfortunately for Crown, Synflex never had a license to perform the insulation services it provided in connection with the Mojave project. Accordingly—and this is undisputed—under Section 7031 of California Business and Professions Code, Synflex had no right to recover payment for those services, and the invoices it issued to ATMGP were "void and illegal." *Wilson v. Steele*, Cal. App. 3d 1053, 1056 (1989) ("[A] contract by an unlicensed contractor is void and illegal."). *See also MP Nexlevel of Cal., Inc. v. CVIN, LLC*, 740 F. App'x 881, 883 (9th Cir. 2018) ("In California, a contractor who performs unlicensed work is not entitled to recover payment for that work").

4

## II. THE BANKRUPTCY PROCEEDINGS

On March 29, April 6, April 7, and June 12, 2016, the Debtors commenced Chapter 11 cases by filing voluntary petitions for relief under the Bankruptcy Code. The Debtors were organized into four groups: (i) the EPC Reorganizing Debtor Group (which includes ATMGP); (ii) the Solar Reorganizing Debtor Group; (iii) the EPC Liquidating Debtor Group; and (iv) the Bioenergy and Maple Liquidating Debtor Group. The Debtors' Plan of Reorganization and Liquidation Plan was likewise composed of four separate plans, one for each Debtor group. A001-A060. On December 15, 2016, the Bankruptcy Court entered the Order Confirming Debtors' Modified First Amended Plans of Reorganization and Liquidation. *See* A061-A190; A191. The plans became effective on March 31, 2017. As of that date, the Debtors' chapter 11 cases were partially substantively consolidated.

As part of the reorganization plan, and pursuant to the Litigation Trust Agreement, the Litigation Trustee was given responsibility for, among other things, "investigating, prosecuting, settling, liquidating, or disposing of the Litigation Trust Causes of Action" related to the EPC Reorganizing Debtors. A493-A540 at A496-A497, A503. "Litigation Trust Causes of Action" include "[a]ll causes of action, claims, and counterclaims in any actions, mediations, arbitrations, and other proceedings with respect to Distribution International,

5

Crown Financial Group, Inc., Crown Solutions Company, and any related subsidiaries and affiliates." A530, A532.

On June 20, 2016, Crown filed a Proof of Claim against ATMGP in the amount of $2,022,527.00. A459–A483, Proof of Claim No. 114. Synflex filed a Proof of Claim against ATMGP in the amount of $11,192,133.12. *See* A484-A492, Proof of Claim No. 302. At least 29 invoices that Synflex included as a basis for its claim were invoices purchased by Crown. The Litigation Trustee objected to both claims.

On March 26, 2019, the Bankruptcy Court sustained the Litigation Trustee's objections to Synflex and Crown's claims. *Abeinsa*, 2019 WL 1400175, at *7. The Bankruptcy Court found that Synflex's claims were invalid because Synflex had not been a licensed contractor for the Mojave project and was therefore barred from recovering on its invoices under California law. The Court further concluded that Crown was an assignee of Synflex's claims and therefore it also lacked enforceable claims. *Id.* Finally, the Bankruptcy Court held that because Synflex's invoices to ATMGP were void, the Court did not need to address Crown's contention that the April letter and ATMGP's payment of certain invoices to Crown gave Crown contractual rights independent of Crown's Account Purchase

6

Agreement with Synflex. Accordingly, the Bankruptcy Court entered an order disallowing and expunging Crown's claim. A432-433.

On April 8, 2019, Crown filed a timely notice of appeal. D.I. 1. I did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and my decisional process would not be significantly aided by oral argument.

### III. DISCUSSION

Crown argues that the Bankruptcy Court erred in finding that Crown was an assignee of Synflex and in failing to find that the April letter, which Crown calls a "No-Offset Agreement," gave Crown "an independent contractual basis" to recover from ATMGP the amounts of the invoices it purchased from Synflex. D.I. 11 at 1, 10. I disagree.

First, the express terms of the April letter and the Account Purchase Agreement confirm that Crown was the assignee of Synflex's right to collect on the invoices it issued to ATMGP. Mr. Tribe stated in the April letter that Synflex "*has assigned* all rights, title, and interest in its accounts receivable to [Crown] effective today's date." A1 (emphasis added). The assignment was made pursuant to the Account Purchase Agreement. That agreement expressly provided that Synflex "sells and transfers" each account receivable selected and purchased by

7

Crown. A247. The transfer—that is, assignment—came with "the exclusive right to collect" the accounts receivable in the purchased invoices.

It is well established that an assignee stands in the shoes of the assignor, with the right to exercise the rights and remedies possessed by or available to the assignor. *See Fidelity Mut. Life Ins. Co. v. Clark*, 203 U.S. 64, 74 (1906) ("[T]he assignee of an ordinary contract can only stand in the shoes of the party with whom the contract was made."); *see also Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001) (citing *Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged . . . . Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor.")). "An assignment is intended to change only who performs an obligation, not the obligation to be performed." *In re Fleming Cos., Inc.*, 2004 WL 385517, at *2 (Bankr. D. Del. Feb. 27, 2004), *subsequently aff'd*, 499 F.3d 300 (3d Cir. 2007) (quoting *Medtronic*, 247 F.3d at 60). Thus, an assignee cannot recover more than the assignor could recover. *Medtronic*, 247 F.3d at 60.

As the assignee of Synflex's claim against ATMGP, Crown has exactly what Synflex has: no right to payment of ATMGP's invoices since the invoices are void under Section 7031 of the California Business and Professions Code. Crown does not—and could not reasonably—challenge the Bankruptcy Court's finding that Synflex's invoices are void. As Synflex's assignee, Crown cannot collect what Synflex could not, and thus the Bankruptcy Court did not err in sustaining the Litigation Trustee's objection to Crown's proof of claim.

Second, because Synflex's invoices to ATMGP were void as matter of law, the Bankruptcy Court correctly concluded that it need not address whether the April letter created "an independent contractual basis" for Crown to collect from ATMGP the amount of those invoices. Crown argues that because the April letter asked ATMGP to "confirm by signing below that the[ ] invoice(s) [listed in the Exhibit A's] are in line for payment and the payment obligation of [ATMGP] is not subject to any offsets, back charges, or disputes of any kind of nature" and because ATMGP signed the letter and paid some of the invoices, ATMGP assumed an "independent" and enforceable contractual obligation to pay Crown "the sum-certain amounts set out" in the remaining invoices. D.I. 17 at 5. But ATMGP's signature confirmed only that its payment of *the invoices* was not subject to an offset, back charge, or dispute. The condition precedent of that confirmation is that there were invoices to collect. To the extent the April letter created

obligations on ATMGP's part or gave Crown rights to the payment of Synflex's invoices, those obligations and rights exist only insofar as Synflex had extant invoices. In this case, however, it is undisputed that the invoices Synflex issued to ATMGP were void as a matter of law. Thus, the Bankruptcy Court correctly concluded that it "d[id] not need to consider the validity of an alleged independent contract, as the claims [i.e., the invoices] underlying the contract are void." *Abeinsa*, 2019 WL 1400175, at *6.[2]

## IV. CONCLUSION

For the reasons set forth herein, I will affirm the Bankruptcy Court's decision to sustain the Litigation Trustee's objection to Crown's proof of claim.

The Court will issue a separate Order consistent with this Memorandum Opinion.

---

[2] Crown cites *LSQ Funding Group v. EDS Field Servs.*, 879 F. Supp. 2d 1320 (M.D. Fla. 2012), to support its argument that the April letter gave it an independent contractual basis to recover Synflex's invoices issued to ATMGP. But as the Bankruptcy Court held, *LSQ* is inapposite because it did not involve "invoices [that] are unenforceable under section 7031." *Abeinsa*, 2019 WL 1400175, at *6, n.47. Under California law, the invoices could give rise to no obligation of anyone to pay anything.